IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD SCHULER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO.: _____ |
| PUBLIX SUPERMARKETS, INC. | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| _____ | | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Richard Schuler, by and through his undersigned counsel, and files this Complaint for Damages, showing the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

2.

This action seeks declaratory relief, liquidated and actual damages, and other relief for Defendant's intentionally discriminatory employment practices under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008 ("ADAAA").

1

## JURISDICTION AND VENUE

3.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331.

4.

The unlawful employment practices alleged in this Complaint were committed within this District. In accordance with 28 U.S.C. § 1391, and LR 3, Northern District of Georgia, venue is appropriate in this Court.

## PARTIES

5.

Plaintiff is a resident citizen of the State of Georgia, and is subject to the jurisdiction of this Court.

6.

Defendant Publix Supermarkets, Inc. ("Publix") is a foreign corporation qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

7.

Defendant Publix may be served with process by delivering a copy of the summons and complaint to its registered agent, Corporate Creations Network Inc., 2985 Gordy Parkway, 1st Floor, Marietta, Georgia 30066.

## ADMINISTRATIVE PROCEDURES

8.

Plaintiff timely filed a charge of discrimination against Defendant Publix with the Equal Employment Opportunity Commission (EEOC).

9.

The EEOC issued a "Notice of Right to Sue" on September 16, 2013, entitling an action to be commenced within ninety (90) days of receipt of that notice.

10.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue".

## FACTUAL ALLEGATIONS

11.

Defendant Publix is now, and at all times relevant hereto, has been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA and has employed more than the requisite number of persons for the requisite duration under the ADA.

12.

Plaintiff began working for Publix in 1982 and in 1985, he became a Maintenance Technician, first in Miami, Florida and more recently in

Lawrenceville, Georgia.

13.

In 2009, Ralph Gagner became the manager of Plaintiff's department.

14.

Plaintiff suffers from a birth defect in his left eye. This causes his eye to water excessively and makes it particularly sensitive to extreme temperatures.

15.

Despite this ongoing condition, Plaintiff has never asked for nor received any accommodation from Publix for his medical condition.

16.

In 2011, Plaintiff was suffering from excess watering and pain in his eye. His doctor recommended surgery to prevent the eye muscles from atrophying. This surgery was scheduled for March 24, 2011.

17.

Plaintiff filed the appropriate FMLA form with Publix Human Resources more than 30 days in advance and planned to be absent from work for approximately 14 days to recover from the surgery.

18.

On March 19, 2011, Plaintiff was working his scheduled 4:00pm – 2:30am shift. At approximately 5:00pm, he began suffering from eye pain and watering as

4

he entered the maintenance shop with Danny Grant, another technician.

19.

Because they were about to enter the freezer for their next scheduled job, Plaintiff suggested that he and Mr. Grant take a short break so he could alleviate his eye watering and pain.

20.

As Plaintiff was sitting on a chair covering his eye and speaking with Mr. Grant, Mr. Gagner walked by the maintenance shop. Mr. Gagner apparently saw Plaintiff through the gate with his hand over his eye. Plaintiff waved and said "Hey Ralph." Mr. Grant was sitting behind his toolbox and was not visible to Mr. Gagner as he walked by.

21.

Soon after, Plaintiff and Mr. Grant resumed their shift and worked the next day (Sunday) as planned. Plaintiff was off as scheduled on March 21-22, 2011 and returned to work on Wednesday, March 23, 2011.

22.

On that day, one day prior to Plaintiff's eye surgery, Mr. Gagner asked to meet with Plaintiff. Mr. Gagner asked what Plaintiff was doing in the maintenance shop that previous Saturday. Plaintiff explained that he and Mr. Grant had completed their first maintenance request and they were getting ready to go into

the freezer when Mr. Gagner walked by.

23.

Mr. Gagner accused Plaintiff of sleeping. Plaintiff denied this and stated that he even waved at Mr. Gagner. Mr. Gagner responded, "I don't care what you say; I'm writing you up on a final for sleeping."

24.

Plaintiff protested, but Mr. Gagner said that the write up would be ready before Plaintiff left that day for his approved medical leave.

25.

Night shift manager Thad Stuart warned Plaintiff that "this is a final, so you need to be careful."

26.

That night, Plaintiff left a message for Richard Schuler (same name, different person), the Vice President of Distribution at corporate headquarters in Lakeland, Florida explaining what had happened and that he was on a final warning.

27.

Plaintiff also called Bob Burns, the Director of In-House Maintenance in Deerfield Beach, Florida, and explained that he was not sleeping on the job and that Mr. Gagner did not speak with Mr. Grant prior to writing him up. Mr. Burns

said that the company would investigate.

28.

The following day, Plaintiff underwent surgery as scheduled and began his approved medical leave. On March 29, Plaintiff called Vice President Richard Schuler again and explained in more detail what had happened. They discussed Plaintiff moving from the maintenance shop to a truck driving position now that his vision was surgically fixed.

29.

Plaintiff returned from medical leave on April 6, 2011.

30.

On April 29, 2011, Plaintiff had a maintenance job on an overhead door. After starting the job, he was called away via radio to handle another overhead door issue, but finished the previous task before moving on to the second. The total time for the two jobs was about 40 minutes.

31.

Later that shift, he had to perform maintenance on a baler. That job has a time estimate of one hour, but Plaintiff completed the maintenance in 15 minutes.

32.

Plaintiff worked the next two days and then had regularly scheduled off days on May 2-3, 2011. On Wednesday, May 4, 2011, Mr. Gagner called him into the

office and showed him the times that were recorded for each piece of equipment he worked on for his April 29th shift.

33.

Plaintiff explained that Mr. Stuart had told the members of their shift to write down the scheduled time for each piece of equipment rather than the actual time it took to complete the task so their maintenance budget would not be reduced.

34.

Mr. Stuart neither confirmed nor denied this, and Mr. Gagner did not ask Mr. Stuart his response to this allegation.

35.

Mr. Gagner stated that he had surveillance footage of Plaintiff not working on the aforementioned baler.

36.

When Plaintiff asked to view the footage, his request was denied.

37.

Mr. Gagner terminated Plaintiff based on his previous final warning from March 23, 2011 after 29 years of service with Publix.

## COUNT I: DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

38.

Plaintiff is a qualified individual, as defined in Section 101(8) of the ADA, who was suffering from a disability, as defined in Section 3 of the ADA.

39.

Defendant Publix discriminated against Plaintiff on the basis of his disability by placing him on a final warning for sleeping on the job when he was merely tending to a permanent medical condition (in his eye).

40.

Defendant's above described actions violated Plaintiff's rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., as amended by the Americans with Disabilities Amendments Act of 2008.

## COUNT II: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

41.

Plaintiff is a qualified individual, as defined in Section 101(8) of the ADA, who is suffering from a disability, as defined in Section 3 of the ADA.

42.

Defendant Publix retaliated against Plaintiff by terminating his employment a few weeks after his eye surgery for a pretextual reason relating back to his final

warning.

43.

Defendant's above described actions violated Plaintiff's rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., as amended by the Americans with Disabilities Amendments Act of 2008

### PRAYER FOR RELIEF

44.

**WHEREFORE**, Plaintiff requests judgment as follows:

(a) Compensatory and/or punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(b) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(c) Reasonable attorneys' fees and expenses of litigation;

(d) Trial by jury as to all issues;

(e) Prejudgment and post-judgment interest at the rate allowed by law;

(g) Declaratory relief declaring that Defendant has violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof,

and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)       All other relief to which Plaintiff may be entitled.

Respectfully submitted this __ day of November, 2013.

/s/ Paul J. Sharman
PAUL J. SHARMAN
Georgia State Bar No. 227207

The Sharman Law Firm LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Phone: (678) 242-5297
Fax: (678) 802-2129
Email: paul@sharman-law.com

Counsel for Plaintiff